# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 22-2757

BOWE MARVIN,

      *Plaintiff-Appellant*,

*v.*

DAVID HOLCOMB, *et al.*,

      *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:20-cv-553-MGG — **Michael G. Gotsch, Sr.**, *Magistrate Judge*.

ARGUED MAY 24, 2023 — DECIDED JULY 11, 2023

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

ST. EVE, *Circuit Judge*. On April 3, 2015, Bowe Marvin's mother called the police to perform a wellness check on her son, who she thought was suicidal. St. Joseph County Sheriff's Deputies David Holcomb, Matthew Corban, and Christopher Lawson-Rulli arrived at Marvin's home and found his mother in the driveway with a bleeding lip. When she told them that her son had hit her with a chair and caused the bleeding, they approached the house to speak with Marvin himself. In the

subsequent altercation, the deputies saw that Marvin had a knife, pulled him from the doorway, and wrestled him to the ground. While he resisted, they tased him twice and struck him several times.

In response, Marvin sued the deputies for unlawful entry and excessive force in violation of the Fourth Amendment. The district court granted summary judgment on some of Marvin's claims, and a jury returned a verdict for the defendants on the remaining claims. We now affirm.

### I. Background

**A. Factual History**

On April 3, 2015, Bowe Marvin was 21 years old and living with his father, Greg. That day, Marvin's mother, Michelle, drove to Greg's house to tell Marvin that he needed to move out and come live with her. This led to a heated argument. Marvin told her he would not leave his father's house and became increasingly agitated. In his anger, he broke her sunglasses, flipped an ashtray, and threw a chair across the room, hitting her in the face and cutting her lip open. Michelle then left the house and called the police from her truck in the driveway. She asked the police to perform a welfare check on Marvin, as she was worried he might be suicidal. She also told the dispatcher that Marvin regularly carried a box cutter.

When the police arrived, they found Michelle in the car in the driveway. The group included three Sheriff's Deputies: David Holcomb, Matthew Corban, and Christopher Lawson-Rulli. They saw Michelle's split lip and repeatedly asked what had happened to her. She insisted she was fine and asked them to go check on Marvin. The deputies explained that they would not go inside until she told them what had happened

to her lip. At that point, Michelle told them that her son had thrown a chair at her. One deputy allegedly said, "I'm taking him down," and all three approached the house.

Deputy Corban knocked on the door and Greg answered. Marvin then came to the door and stood in the doorway. The deputies asked Marvin several times to leave the house, but they did not tell him why they were there, that they had spoken to his mother, or whether he was under arrest. They also repeatedly asked if he had any weapons, and he responded, "What? What do you mean?" Seemingly amidst this discussion of whether Marvin had a weapon, Greg came up behind him and removed a knife from Marvin's back pocket.[1]

Seeing that Greg had removed a knife, Lawson-Rulli and Holcomb grabbed Marvin's hands and pulled him from the house. The parties dispute whether Marvin was inside or outside the doorway when this happened—that is, they dispute whether the deputies had to enter the house to pull him out. Marvin fell to the ground outside and attempted to stand up. Corban wrapped his arms around Marvin's legs, bringing him back to the ground. Holcomb tased Marvin once; and when that did not seem to have an effect, he tased him a second time. Simultaneously, the deputies hit him with open hands and closed fists. When Marvin stopped moving, Corban was able to place him in handcuffs, after which he "was compliant." In the district court, Marvin admitted that "[a]t the time the deputies restrained him, [he] was uncooperative

---

[1] It is undisputed that this knife was a box cutter, which Marvin and his mother have both explained is a common farm tool.

but he was not threatening or violent." He claims he suffered a concussion and a broken toe from the encounter.

### B. Pretrial Proceedings

Marvin filed this lawsuit on June 10, 2020. He brought claims under 42 U.S.C. § 1983 against all three deputies for unlawful entry and excessive force, in violation of his Fourth Amendment rights. He also brought excessive force claims under Indiana state law. At the close of discovery, the deputies moved for summary judgment on all claims. The district court granted the motion in part and denied it in part.[2]

First, the court dismissed the unlawful entry claims against Corban, because it was undisputed that he had not helped the other deputies pull Marvin from his house. The court also dismissed the excessive force claims against Lawson-Rulli, who was not involved in tasing or hitting Marvin. The district court concluded that without personal involvement in the alleged violations, and absent a showing that the deputies could be vicariously liable as supervisors, these claims against Corban and Lawson-Rulli could not survive.

Next, the court considered Marvin's unlawful entry claims as to Lawson-Rulli and Holcomb. Taking the evidence in the light most favorable to Marvin, the court held that a reasonable jury could find that the deputies entered Marvin's home to arrest him. Furthermore, drawing all reasonable inferences in Marvin's favor, a reasonable person could find that no exigent circumstances justified this warrantless entry because

---

[2] The district court also granted summary judgment on claims against the Sheriff's Department, which are not at issue in this appeal.

the only weapon Marvin was known to have—his box cutter—had just been taken from him. Accordingly, the court denied summary judgment on the claims of warrantless entry, leaving the issue for trial.

Finally, the court considered the excessive force claim. Because the deputies had probable cause to believe that Marvin had committed a battery against his mother and that he might be suicidal, because he admitted he was resisting arrest, and because he did not respond to the initial use of the taser, the court determined that Corban and Holcomb's use of force was reasonable as a matter of law. With this determination, the court granted summary judgment to Corban and Holcomb on Marvin's excessive force claims, under both § 1983 and Indiana state law.

### C. Trial

Marvin's unlawful entry claims against Holcomb and Lawson-Rulli proceeded to a jury trial. At the start of the trial, the district court gave several preliminary jury instructions on the Fourth Amendment without objection. The court first explained that warrantless entries into the home are presumed unreasonable without consent, before giving the following instructions:

> **7**. If there is no consent, a warrantless entry is still reasonable when law enforcement officers have probable cause for an arrest and "exigent circumstances" exist.
>
> Probable cause … for an arrest exists if, at the moment the arrest was made, a reasonable person in Defendants' position would have believed that Plaintiff had committed or was committing a crime. In making this decision, you should consider what Defendants knew

and the reasonably trustworthy information Defendants had received.

…

Exigent circumstances include emergency situations in which a law enforcement officer has a reasonable and good faith belief that a serious threat to the officer's safety or the safety of others is present. The officer may enter for the purposes of insuring or protecting the officer's wellbeing and the wellbeing of others.

The burden is on the Plaintiff to prove that an entry was unreasonable.

**8**. Under the Fourth Amendment, the point where the home begins must be identified by inquiry into reasonable expectations of privacy. A reasonable expectation of privacy exists when (1) the plaintiff exhibits an actual expectation of privacy (subjective) and, (2) the expectation is one that society is prepared to recognize as reasonable (objective).

At the close of evidence, the court discussed the final jury instructions—including the preliminary instructions quoted above, which had already been read to the jury. At that time, Marvin's counsel objected for the first time to the language of Jury Instruction 8.[3] The district court overruled the objection, and the jury heard these instructions a second time before returning a verdict for the defendants.

---

[3] This instruction was number 8 in the preliminary instructions and number 9 in the final instructions.

No. 22-2757                                                    7

## II. Analysis

On appeal, Marvin challenges both the jury's decision at trial and the district court's grant of summary judgment. Because the jury's decision informs part of our summary judgment analysis, we begin with the argument for a new trial.

### A. Trial and Jury Instructions

Marvin first contends that he deserves a new trial on his unlawful entry claims because the district court erred in giving Jury Instruction 8. "We review challenges to jury instructions de novo. Nevertheless, the district court is afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. Chanu*, 40 F.4th 528, 542 (7th Cir. 2022) (cleaned up). "This inquiry requires us to first determine whether an instruction misstates or insufficiently states the law and, if legally improper, then to determine whether the instruction could produce prejudice by … confusing or misleading" the jury. *Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012) (citation omitted).

Marvin argues that the language in Jury Instruction 8—"the point where the home begins must be identified by inquiry into reasonable expectations of privacy"—so misled the jury as to warrant a new trial. We begin, as *Guzman* requires, with the question of whether this instruction accurately states the law. This is not a clear-cut inquiry. On the one hand, Jury Instruction 8 is an almost word-for-word quote from this Court's opinion in *Sparing v. Village of Olympia Fields*:

> The lines [of when intrusion into a home begins] are not so clear, however, because exactly where outside ends and where the home begins is not a point

immediately obvious. Splitting fractions of an inch can be a very treacherous endeavor, producing arbitrary results. But we need not pull out our rulers and begin to measure. Under the Fourth Amendment, the point must be identified by inquiry into reasonable expectations of privacy.

266 F.3d 684, 689 (7th Cir. 2001).[4] On the other hand, "more recent Fourth Amendment cases have clarified that the test most often associated with legitimate expectations of privacy … supplements, rather than displaces, the traditional property-based understanding of the Fourth Amendment." *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (cleaned up); *see also Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (the Fourth Amendment "draws a firm line at the entrance to the house") (cleaned up); *Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window."); *Kyllo v. United States*, 533 U.S. 27, 34 (2001)

---

[4] Marvin's specific argument was that Jury Instruction 8 was inaccurate or misleading because it failed to take into account our ruling in *United States v. Berkowitz*. In *Berkowitz*, we held that when an arrestee opens the door after police have knocked, he "has not forfeited his privacy interest in the home; he has not relinquished his right to close the door on the unwanted visitors." 927 F.2d 1376, 1387 (7th Cir. 1991). But in *Sparing*, we considered and applied *Berkowitz* in crafting the standard outlined above. 266 F.3d at 689–90. To that end, Marvin's argument is wrong on its face. Nevertheless, we note our concerns with *Sparing* above for consideration at a later date.

(expressing concerns with "physical intrusion[s] into … constitutionally protected area[s]") (cleaned up). This leaves us skeptical that *Sparing*'s conception of the threshold of the home as a malleable concept remains good law. To the contrary, it seems that the exact physical threshold of the home is highly relevant to the Fourth Amendment inquiry.

But we need not answer that question today. Turning to *Guzman*'s second step, and reading the instructions as a whole, *see Saathoff v. Davis*, 826 F.3d 925, 932 (7th Cir. 2016), we are confident that Jury Instruction 8 was not prejudicial to Marvin. Holcomb and Lawson-Rulli never argued to the jury that Marvin had relinquished any expectation of privacy in his doorway—they argued that exigent circumstances justified warrantless entry *through* that doorway. It is unquestionably an accurate statement of the law that exigent circumstances can justify warrantless entry. *See Lange*, 141 S. Ct. at 2017. And the district court explained as much in Jury Instruction 7. In other words, whether Marvin had relinquished his right to privacy in the doorway—meaning a warrant would ordinarily be required for entry—was irrelevant. The sole point of Holcomb and Lawson-Rulli's argument was that an exception to that warrant requirement applied.

Because Marvin has failed to show prejudice, there are no grounds to overturn the jury's verdict.

### B. Summary Judgment

Marvin's next arguments focus on the district court's grant of summary judgment on two of his claims. "We review [a] summary-judgment order de novo, construing the evidence and drawing inferences in [the nonmovant]'s favor." *Pain Ctr.*

*of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018) (citation omitted).

**1. Use of Force**

We now turn to the grant of summary judgment on Marvin's excessive force claims. The district court held that the force used to subdue Marvin was reasonable as a matter of law, foreclosing both his federal and state law excessive force claims.[5] On appeal, Marvin insists that there are genuine issues of material fact regarding the amount of force used and whether it was justified.[6] In support, he points to the facts pleaded in his unverified amended complaint. But Marvin appeals a grant of summary judgment. He cannot create a genuine dispute of material fact by relying on allegations; he must point to admissible evidence in the record. *Est. of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017). Because Marvin

---

[5] The Court of Appeals of Indiana has held that the reasonableness analysis for state law excessive force claims is coextensive with reasonableness under the Fourth Amendment. *Brooks v. Anderson Police Dep't*, 975 N.E.2d 395, 399 (Ind. Ct. App. 2012) (analyzing use of force under Ind. Code § 35-41-3-3(b)). Accordingly, the holdings on his Fourth Amendment claims are dispositive as to his state law claims.

[6] He also suggested for the first time at oral argument that the force used was per se excessive because his arrest was unlawful. Arguments raised for the first time at oral argument are forfeited. *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 863 (7th Cir. 2015). And at any rate, this argument is wrong. Marvin cites *Carlson v. Bukovic*, for this proposition. 621 F.3d 610, 622 n.19 (7th Cir. 2010). But that exact footnote makes clear that excessive force claims are not determined by presence or lack of probable cause. *Id.* They must be considered under the totality of the circumstances, *id.*, exactly as the district court did in this case.

has failed to carry that burden, we will not disturb the judgment of the district court.

### 2. Personal Involvement

Finally, Marvin appeals the district court's grant of summary judgment in favor of Corban and Lawson-Rulli for lack of personal involvement in the unlawful entry and use of excessive force, respectively. Marvin contends that this was in error because both men "witnessed," "condoned," and "failed to act to prevent those violations." But without an underlying constitutional or statutory violation, there can be no § 1983 liability. And we have already explained that Marvin has shown no viable reason to overturn the jury's verdict or the district court's holding. Accordingly, this argument, too, must fail.

## III. Conclusion

In light of the jury's verdict on the unlawful entry claims and Marvin's failure to create a factual dispute regarding his excessive force claims, he has failed to prove that the defendants violated his constitutional rights. The judgment of the district court is

AFFIRMED.